# In the United States Court of Federal Claims

**No. 25-1289C**
**Filed: April 13, 2026**

```
* * * * * * * * * * * * * * * * * * *   *
                                         *
  FRANKLIN MALDONADO,                    *
                                         *
            Plaintiff,                   *
                                         *
       v.                                *
                                         *
  UNITED STATES,                         *
                                         *
            Defendant.                   *
                                         *
                                         *
  *  * * * * * * * * * * * * * * * * *    *
```

**Franklin Maldonado**, <u>pro se</u>, Lebanon, CT.

**Blake W. Cowman**, Trial Attorney, Assistant Director, Commercial Litigation Branch, Civil Division United States Department of Justice, Washington DC, for defendant. With him were **Franklin E. White, Jr.**, Assistant Director, Commercial Litigation Branch, **Patricia M. McCarthy**, Director, Commercial Litigation Branch, and **Brett A. Shumate**, Assistant Attorney General, United States Department of Justice, Washington, DC.

## O P I N I O N

<u>**HORN, J.**</u>

On August 4, 2025, <u>pro se</u> plaintiff Franklin Maldonado[1] filed a complaint against the United States in the United States Court of Federal Claims. In the case currently before this court, plaintiff seeks recognition of federal liability and monetary damages in the amount of $25,000,000.00 resulting from the actions of multiple federal agencies and their failure to take the actions necessary to protect plaintiff from constitutional violations by Connecticut state courts.[2] In response to plaintiff's complaint, defendant moved to

---

[1] In the case caption of plaintiff's complaint as filed, plaintiff writes that the complaint is brought by "Franklin: Maldonado©, Trustee of MALDONADO'S FAMILIA GODTRUST."

[2] It appears that plaintiff has filed multiple actions in federal and state courts against banks, credit unions, insurance companies, and individuals. <u>See</u> <u>In re Maldonado v. Swick</u>, No. 3:23-MC-00024 (D. Conn. Mar. 29, 2023); <u>In re Maldonado</u>, No. 3:23-MC-00017 (D. Conn. Mar. 2, 2023); <u>In re Maldonado</u>, No. 1:05-BK-45668 (Bankr. S.D.N.Y. Oct. 12, 2005); <u>Maldonado v. People's Trust Ins. Co.</u>, No. 2020-023057-CA-01 (Fla. Cir.

dismiss plaintiff's complaint pursuant to Rule 12(b)(1) (2025) and Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC) for lack of subject matter jurisdiction and for failure to state a claim.

**FINDINGS OF FACT**

Plaintiff's complaint states:

> This complaint is not merely a grievance — it is a constitutionally lawful demand for remedy to a series of deliberate and compounding injuries, executed under color of state law, and left uncorrected by federal oversight mechanisms despite lawful and timely notice, depriving the Claimant of property, commercial instruments, due process, and equal protection in violation of the Constitution and statutory safeguards.

> At the heart of this matter is a judicial process that no longer resembled adjudication. The Connecticut trial and appellate courts engaged in a deliberate and documented pattern of procedural suppression, transcript tampering, void judgments, and record manipulation—all of which were enforced against a private trust holding perfected commercial liens and unrebutted security interest in the underlying property. These acts were not accidental or negligent; they were systemic, coordinated, and constitutionally intolerable.

> Despite multiple lawful attempts by the Claimant to engage the judicial process through verified affidavits, trust documentation, perfected UCC [Uniform Commercial Code] filings, and unrebutted judicial notices, the state court actors—both at the trial and appellate levels—repeatedly suppressed critical evidence, dismissed filings without opinion or hearing, and permitted fraudulent documents submitted by private attorneys to remain in the record, unrebutted and untested. This culminated in a foreclosure process that was not only legally void, but constitutionally offensive. To be clear, this claim does not seek appellate review of a state foreclosure decision. It seeks compensatory relief against the United States for harm caused by state actors whose abuse of authority occurred within and under federally regulated frameworks—namely mortgage securitization, REMIC [Real Estate Mortgage Investment Conduit] trust structures, and property-related due process protections that fall within the scope of federal interest and oversight.

> While the U.S. Department of Housing and Urban Development (HUD), the Department of Justice (DOJ), the Office of Foreign Assets Control (OFAC),

---

Ct. Oct. 26, 2020); <u>Maldonado v. Felix</u>, No. 2005-SC-001090-SM (Fla. Cir. Ct. May 19, 2005); <u>CT Imaging Inc., as assignee of Franklin Maldonado v. Ocean Harbor Casualty Ins. Co.</u>, No. 2002-010019-SP-23 (Fla. Cir. Ct. Apr. 22, 2002); <u>Maldonado v. Ocean Harbor Casualty Ins. Co.</u>, No. 1999-010440-CC-25 (Fla. Cir. Ct. Dec. 21, 1999); <u>Maldonado v. Dorsey</u>, No. 0013686/2004 (N.Y. Sup. Ct. Aug. 24, 2004). It also appears that more than ten cases have been filed against plaintiff by insurance companies, banks, debt collectors, apartment complexes, and other individuals.

and the Federal Bureau of Investigation (FBI) were all notified in good faith through formal documentation—including FOIA [Freedom of Information Act] submissions, sanctions referrals, and procedural complaints—the federal agencies did not act with the urgency the situation demanded. Their delayed response, though not necessarily malicious, allowed the harm to crystallize under color of judicial authority. Had timely oversight or intervention occurred, the harm now before this Court may have been prevented.

The damages sustained by the Claimant are not abstract or speculative. They are grounded in economic injury, trust violations, property deprivation, redaction failures, and unrebutted public record fraud—all of which can be substantiated with documentary evidence, court dockets, certified affidavits, and unrebutted filings. This claim now seeks just compensation under the Tucker Act, the Fifth Amendment, and applicable federal law for injuries that occurred through the failure of federally-anchored protections to shield the Claimant from judicial abuse. The United States, though not the author of this harm, is the party constitutionally tasked with ensuring that such harm is not carried out under its watch.

(alterations added).[3] Plaintiff continues:

The Claimant, Franklin: Maldonado©, appears in his private capacity as Trustee and Secured Party of MALDONADO'S FAMILIA GODTRUST©, a private trust holding perfected and unrebutted commercial liens over the subject matter property. The Claimant has standing under Article III, as he has suffered concrete, particularized, and actual injury caused by the denial of due process and constitutional protections during state-level foreclosure proceedings conducted under color of law and within federally regulated structures, including those involving mortgage securitization.

Plaintiff also suggests:

This case is not merely about foreclosure. It is about the systemic hijacking of due process and the weaponization of judicial machinery against a secured trust estate, while the very agencies tasked with oversight stood silent. The harm is not speculative — it is documented, unrebutted, and repeatable. This Court is now the last lawful venue available to enforce the Constitution.

According to plaintiff's complaint, foreclosure proceedings against plaintiff in the State of Connecticut violated his constitutional rights through the unlawful taking of private commercial assets and trust property without just compensation, denial of due process, and numerous acts of alleged judicial and administrative misconduct, apparently by judges and clerks at the "Connecticut Superior Court" and the "Connecticut Appellate

---

[3] Capitalization, grammar, punctuation, alterations, abbreviations, spelling, emphasis, and choice of words when quoted in this Opinion are as they originally appear in plaintiff's submissions to this court.

Court." The complaint alleges that the Connecticut Superior Court "proceeded with foreclosure adjudication" against plaintiff "under false presumptions of standing and jurisdiction." According to the complaint, the trial court ignored lawfully filed objections, judicial estoppel notices, and certain evidence, and manipulated the trial transcripts that were submitted to the appellate court. The complaint also alleges that the Connecticut Appellate Court "denied all judicial notices, estoppel filings, and constitutional evidence without explanation," and issued a per curiam affirmance without opinion on June 17, 2025.[4] Plaintiff alleges that these state court actions "stripped the Claimant of protections guaranteed by the Sixth and Fourteenth Amendments, as well as Article VI, Clause 2—the Supremacy Clause of the U.S. Constitution." Plaintiff asserts that the United States is liable for "allowing such injury to occur" although it was legally obligated to "protect the rights and property interests secured under federal frameworks."

Plaintiff also states in his complaint:

Additionally, the Claimant, through private commercial research and preliminary HUD disclosures, identified a potential pattern of large-scale financial misconduct involving the Ginnie Mae REMIC Trust 2021-143, with an estimated value exceeding $500 million. Based on partial FOIA disclosures, the Claimant believes that this REMIC trust was improperly populated with invalid, incomplete, or commercially defective mortgage instruments—raising substantial questions of REMIC compliance, investor deception, and improper foreclosure practices across multiple loan pools. The Claimant's mortgage is demonstrably one such defective instrument, lacking proper assignment, delivery, or holder-in-due-course status.

Plaintiff alleges he notified federal oversight entities, including HUD, DOJ, FBI, and OFAC, of the alleged constitutional violations by state actors. Specifically, plaintiff states on April 8, 2025, he submitted FOIA Request No. 25-FI-HQ-02286 seeking records related to "the securitization, ownership chain, insurance filings, and custodial handling of a federally-insured mortgage encumbering trust property," which was formally acknowledged by HUD on April 15, 2025. Plaintiff claims that HUD "engaged in a pattern of procedural suppression and record concealment in violation of the Freedom of Information Act, 5 U.S.C. § 552." Plaintiff asserts that his FOIA request was digitally erased from HUD's public portal on May 2, 2025, constituting "potential criminal concealment of federal records via digital erasure" in violation of 18 U.S.C. § 2071. Plaintiff continues:

Faced with this digital obstruction, the Claimant submitted FOIA Appeal No. 25-A-HQ-00019 on May 6, 2025, which was granted.[5] In its written appeal determination, HUD acknowledged the agency's failure to respond in a timely manner and confirmed that the FOIA request remained active and

---

[4] Plaintiff's complaint claims that the affirmance was issued on June 13, 2025, however, the affirmance reflects the issuance date was June 17, 2025.

[5] From the exhibits attached to plaintiff's complaint, it appears that plaintiff's appeal was not granted, but merely acknowledged as having been received by HUD.

under review. The acknowledgment further stated that a final determination would be issued upon completion of processing—a tacit admission that the earlier deletion and nonresponse violated statutory obligations.

(footnote added). According to the complaint, HUD's failure to timely and completely respond to plaintiff's request denied plaintiff access to evidence needed to secure injunctive relief in state trial court. Additionally, plaintiff argues that HUD's "delay and obstruction" violated FOIA, the Federal Records Act, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and HUD's own regulations found at 24 C.F.R. § 15.106.

Additionally, plaintiff's complaint states:

The acts of procedural fraud, deprivation of property rights, and coercive misuse of judicial authority committed by state actors — with no meaningful corrective action by federally bound enforcement — fall squarely under the prohibitions outlined in EO 13818, Section 1(a)(i)(A) and (B), which target actors who "are responsible for or complicit in, or have directly or indirectly engaged in, serious human rights abuse or corruption."[6]

(footnote added). Plaintiff asserts that these actions fall within the scope of Executive Order 13818 (EO 13818) made, according to the plaintiff, pursuant to the Global Magnitsky Human Rights Accountability Act which, according to plaintiff, authorizes sanctions against government officials. Plaintiff claims that these

violations, though committed by state officials, fall squarely within the scope of EO 13818 because they were:

1. Systemic and coordinated acts of judicial corruption;

2. Involving misappropriation and attempted seizure of secured commercial property;

3. Designed to suppress lawful redress, silence public notice, and obstruct due process;

4. Reported formally to federal agencies, triggering international and financial oversight jurisdiction.

Plaintiff also alleges that these actions are "actionable under EO 13818 and have been properly referred to OFAC."

Plaintiff further alleges that on April 14, 2025, he submitted a report, including a description of his constitutional claims, to the Civil Rights Division of the DOJ. Then, on June 22, 2025, plaintiff alleges he submitted a request to the FBI's Criminal Investigative Division for an FBI investigation under EO 13818 into judicial corruption, fraud, and civil rights violations including expropriation of private assets under color of law. On June 30,

---

[6] The quoted language in plaintiff's complaint is found in Section 1(a)(ii)(A) and (B) of the Executive Order, which only applies to a "foreign person." <u>See</u> Exec. Order No. 13818, 82 Fed. Reg. 60839 (Dec. 20, 2017).

2025, plaintiff alleges he submitted a request pursuant to EO 13818 to OFAC for the initiation of a sanctions investigation and the blocking of property related to the foreclosure pending the outcome of FOIA release and federal investigations.

Plaintiff asserts that the United States is liable because the federal agencies' "non-response or deferred action" enabled state actors to unlawfully harm him and violate his constitutional rights. As noted above, "Plaintiff demands $25,000,000 for harm caused by federal agency failure, including HUD and DOJ omissions, denial of FOIA, and refusal to enforce trust protections. Relief includes monetary judgment, recognition of federal liability, and any other just remedy."

As also indicated above, in response to plaintiff's complaint, on December 1, 2025, defendant moved to dismiss plaintiff's complaint, pursuant to RCFC 12(b)(1) and RCFC 12(b)(6). Defendant argues that this court lacks subject matter jurisdiction over the complaint because it fails to identify a "money-mandating source" of law that "entitles plaintiff to recover money damages from the United States." Defendant argues that none of the statutes or other sources of authority relied upon by plaintiff are money-mandating, as required by the Tucker Act for jurisdiction in this court, other than if a proper takings claim has been alleged and if the plaintiff can establish his claims meets the requirements to assert a valid takings claim, which, according to defendant, plaintiff has not even properly alleged in plaintiff's complaint. Defendant also argues that "the Government's 'performance of its regulatory or sovereign functions does not create contractual obligations'" and this court therefore "lacks jurisdiction to consider such claims." (quoting D & N Bank v. United States, 331 F.3d 1374, 1378–79 (Fed. Cir. 2003)). Defendant further argues that plaintiff has failed to plausibly allege a breach of contract against the United States and, therefore, has failed to state such a claim.

In response to defendant's motion to dismiss, plaintiff argues that this court has jurisdiction because the United States, acting through the Government National Mortgage Association (GNMA), "breached mandatory federal statutory and program-level duties governing the custody, pooling, certification, and management of federally guaranteed mortgage-backed securities." According to plaintiff's response to defendant's motion to dismiss, GNMA breached its statutory full faith and credit guarantee found in 12 U.S.C. § 1721(g), its mandatory duties contained in the GNMA Mortgage-Backed Securities (MBS) Guide, and mandatory federal custodial duties. These duties, according to plaintiff, fairly imply compensation when violated, and, therefore, constitute a money-mandating source of law sufficient for this court's jurisdiction. Plaintiff states that the "core legal theory" is:

- breach of mandatory GNMA custodial duties;
- breach of federal pooling and certification duties;
- breach of custodial obligations over FHA-insured assets;
- breach of federal guaranty-related requirements.

Plaintiff requests a denial of the motion to dismiss or, alternatively, leave to amend his complaint.

In defendant's reply brief, defendant argues that GNMA's guarantees extend only to investors, not to borrowers, such as plaintiff. Therefore, according to defendant, any guarantees from GNMA cannot establish jurisdiction in this case. Furthermore, defendant

asserts that the federal government's performance of regulatory functions "such as the management of mortgage-backed securities," does not create contractual obligations that could provide a basis in the court for jurisdiction to pursue plaintiff's claims. Defendant asserts that plaintiff's claim "boils down to an argument that the Government did not do enough to prevent state actors from harming him," which, according to defendant, can be considered a tort claim, which is also outside of this court's jurisdiction. Finally, defendant adds that even if the government was obligated to provide records to plaintiff, "this Court lacks jurisdiction to consider claims based on failure to maintain and produce records pursuant to non-money mandating sources of law." Defendant also asserts that "because the Court lacks jurisdiction to consider Mr. Maldonado's claims, any amendment [to his complaint] would be futile." (alteration added). Defendant's motion to dismiss has been fully briefed.

**DISCUSSION**

The court recognizes that plaintiff in the above captioned case is proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9–10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Jackson v. United States, 143 Fed. Cl. 242, 245 (2019); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 575 U.S. 985 (2015). However, "[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his pleading." Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Doiban v. United States, 173 Fed. Cl. 527, 537 (2024); Ali-Bey v. United States, 169 Fed. Cl. 729, 733 (2024); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of . . . jurisdictional requirement[s] and set a different rule for pro se litigants only." (alterations added)); Doiban v. United States, 173 Fed. Cl. at 537; Hartman v. United States, 150 Fed. Cl. 794, 796 (2020); Schallmo v. United States, 147 Fed. Cl. 361, 363 (2020); Hale v. United States, 143 Fed. Cl. 180, 184 (2019) ("[E]ven pro se plaintiffs must persuade the court that jurisdictional requirements have been met." (alteration added) (citing Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004))); Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's

complaint, the court 'does not excuse [a complaint's] failures.'" (first alteration added) (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995))); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

The court notes that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing Fanning, Phillips, Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005)); see also St. Bernard Parish Gov't v. United States, 916 F.3d 987, 992–93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even sua sponte, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (alteration added) (citing Foster v. Chatman, 578 U.S. 488, 495 (2016))); Int'l Elec. Tech. Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007); Santini v. United States, 173 Fed. Cl. 724, 726 (2024); Haddad v. United States, 152 Fed. Cl. 1, 16 (2021); Fanelli v. United States, 146 Fed. Cl. 462, 466 (2020).

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941) (citations omitted); see also Wolffing v. United States, 144 Fed. Cl. 626, 637 (2019) ("The waiver of [sovereign] immunity 'may not be inferred, but must be unequivocally expressed.'" (alteration added) (quoting United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003))).

The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2024). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); see also Me. Cmty. Health Options v. United States, 590 U.S. 296, 322

(2020); United States v. Mitchell, 463 U.S. 206, 216 (1983); Sanford Health Plan v. United States, 969 F.3d 1370, 1378 (Fed. Cir. 2020); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); McCrory v. United States, 174 Fed. Cl. 311, 313 (2024); Gulley v. United States, 150 Fed. Cl. 405, 411 (2020); Kuntz v. United States, 141 Fed. Cl. 713, 717 (2019). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216 (omission added); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must look beyond the Tucker Act to identify a substantive source of law that creates the right to recovery of money damages against the United States." (alteration added)); Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008); Olson v. United States, 152 Fed. Cl. 33, 40–41 (2021); Jackson v. United States, 143 Fed. Cl. at 245.

In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is proper in the United States Court of Federal Claims, stating:

> The underlying monetary claims are of three types . . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007–08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S. [Corp. v. United States], 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ] Testan, 424 U.S. [392,] 401–02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim—whether it be the Constitution, a statute, or a regulation—does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S. [Corp. v.

9

United States], 372 F.2d at 1009)). This category is commonly referred to
as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004) (alterations added; fourth omission in original); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Cotter Corp., N.S.L. v. United States, 127 F.4th 1353, 1366 (Fed. Cir. 2025); Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009); Medrano v. United States, 159 Fed. Cl. 537, 542, supplemented, 161 Fed. Cl. 207 (2022); Szuggar v. United States, 145 Fed. Cl. 331, 335 (2019). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is] simply [a] jurisdictional provision[ ] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)." (alterations added; citations omitted)); see also Me. Cmty. Health Options v. United States, 590 U.S. at 322. "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d at 1308 (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp. v. United States, 881 F.3d at 881; Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); Olson v. United States, 152 Fed. Cl. at 41; Downey v. United States, 147 Fed. Cl. 171, 175 (2020) ("And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States." (citations omitted)); Jackson v. United States, 143 Fed. Cl. at 245 ("If the claim is not based on a 'money-mandating' source of law, then it lies beyond the jurisdiction of this Court." (citing Metz v. United States, 466 F.3d 991, 997 (Fed. Cir. 2006))).

"[T]he determination of jurisdiction is based only on the allegations in the plaintiff's 'well-pleaded complaint[.]'" Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 26 (2025) (alterations added) (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 9–10 (1983)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. at 9–10), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208

10

(2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2025); Fed. R. Civ. P. 8(a)(1), (2) (2026); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) (alteration added); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); see also Hale v. United States, 143 Fed. Cl. at 190. As stated in Ashcroft v. Iqbal, "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (alteration in Bell Atl. Corp. v. Twombly)).

In the United States Court of Federal Claims, the United States is the only proper defendant. To the extent plaintiff's allegations raise claims against state officials or individuals, this court lacks jurisdiction over such allegations. Pursuant to RCFC 10(a), all pleadings in the United States Court of Federal Claims must "name all the parties, with the United States designated as the party defendant." RCFC 10(a) (2025) (internal reference omitted); see also 28 U.S.C. § 1491(a)(1). The United States Supreme Court has indicated, for suits filed in the United States Court of Federal Claims and its predecessors, "if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court." United States v. Sherwood, 312 U.S. at 588; see also Cox v. United States, 105 Fed. Cl. 213, 216, appeal dismissed (Fed. Cir. 2012); Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003) ("[T]he only proper defendant for any matter before this court is the United States, not its officers, nor any other individual.") (alteration added; emphasis in original); Stephens v. United States, 166 Fed. Cl. 598, 604 (2023) ("Because Plaintiff's Complaint plainly seek[s] relief against an entity or entities other than the United States, this Court lacks jurisdiction pursuant to 28 U.S.C. § 1491(a)." (alteration added) (citing United States v. Sherwood, 312 U.S. at 588)); Redd v. United States, 147 Fed. Cl. 602, 607 (2020).

Although plaintiff names the United States as the defendant, according to plaintiff's allegations in his complaint, "the conduct at issue was perpetrated primarily by state court officials and private actors." Plaintiff also alleges that "the immediate harm was committed by state judicial officers, clerks, and private attorneys" and describes the names and actions of such individual state officials and attorneys. Moreover, factually in his complaint plaintiff does not base his allegations on affirmative actions by the United States, but rather, according to plaintiff's complaint, plaintiff asserts that the United States is liable for federal agencies' "non-response or deferred action." Further, according to caselaw, when

11

"claims are against a state governmental entity and are not 'against the United States,' the Court of Federal Claims does not have jurisdiction over them." Sounders v. S. C. Pub. Serv. Auth., 497 F.3d 1303, 1308 (Fed. Cir. 2007) (quoting LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995)); see also Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials." (citing 28 U.S.C. § 1491(a))); Gulley v. United States, 150 Fed. Cl. at 412; Weir v. United States, 141 Fed. Cl. 169, 177 (2018) (The court "lacks jurisdiction 'over any claims alleged against states, localities, state and local government entities, or state and local government officials and employees.'" (quoting Anderson v. United States, 117 Fed. Cl. 330, 331 (2014))); Kennedy v. United States, 138 Fed. Cl. 611, 618 (2018), appeal dismissed, 748 F. App'x 335 (Fed. Cir. 2019); Cooper v. United States, 137 Fed. Cl. 432, 434 (2018) (finding that the United States Court of Federal Claims "lacks subject matter jurisdiction to consider plaintiff's claims to the extent they are made against individuals"); Robinson v. United States, 127 Fed. Cl. 417, 420 (2016) ("The court is without 'jurisdiction over claims against individuals.'" (quoting Emerson v. United States, 123 Fed. Cl. 126, 129 (2015))); Merriman v. United States, 128 Fed. Cl. 599, 602 (2016) ("The United States Court of Federal Claims does not have subject matter jurisdiction over claims against private individuals or state officials." (internal citations omitted)); Hicks v. United States, 118 Fed. Cl. 76, 81 (2014) ("This court has no authority to hear claims against private individuals or state entities, including (as in this case) a state police detective or perhaps his police department." (internal citations omitted)). This court also lacks jurisdiction over claims against private parties. See United States v. Sherwood, 312 U.S. at 588; see also Woodson v. United States, 89 Fed. Cl. 640, 649 (2009); Shalhoub v. United States, 75 Fed. Cl. 584, 585 (2007) ("When a plaintiff's complaint names private parties, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations." (citing Stephenson v. United States, 58 Fed. Cl. at 190)). Moreover, to the extent plaintiff is challenging any State court actions, "this Court does not have jurisdiction to review decisions rendered by state courts." Taylor v. United States, 130 Fed. Cl. 570, 572, aff'd, 666 F. App'x 896 (Fed. Cir. 2016) (citing Landers v. United States, 39 Fed. Cl. 297, 301 (1997)). Therefore, this court lacks jurisdiction to review plaintiff's claims against state government entities or their employees, including the judges and clerks at the Connecticut Superior Court and Connecticut Appellate Court.

Next, plaintiff claims violations of several constitutional provisions, including the Sixth Amendment and the Fourteenth Amendment to the United States Constitution, by alleging that state courts violated his rights. None of these constitutional provisions obligate the United States to pay money damages and, thus, cannot serve as the basis for jurisdiction in the United States Court of Federal Claims. See LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (stating that the Fourteenth Amendment is not "a sufficient basis for jurisdiction because [it does] not mandate payment of money by the government." (alteration added)); Whittington v. United States, 166 Fed. Cl. 532, 543 (2023) ("'[T]he fourth and sixth amendments do not in themselves obligate the United States to pay money damages; and, therefore, we have no jurisdiction over such claims.'" (alteration in original) (quoting Dupre v. United States, 229 Ct. Cl. 706, 706 (1981))); Pleasant-Bey v. United States, 99 Fed. Cl. 363, 367 (2011) ("[T]his court does not have

12

jurisdiction over claims based on [the] Fourteenth Amendment because [it does not] mandate[] the payment of money damages." (alterations added)), appeal dismissed, 464 F. App'x 879 (Fed. Cir. 2012); see also Warren v. United States, 106 Fed. Cl. 507, 511 (2012). Plaintiff also alleges that state courts "failed to uphold the superior authority of the Constitution over state procedures," in violation of the Supremacy Clause. U.S. Const. art. VI, cl. 2. See Bakari-El v. United States, 127 Fed. Cl. 700, 705 (2016) ("There is nothing in Article VI that indicates that it is money-mandating, and therefore, this court does not possess jurisdiction over claims that it was violated by the government."); El v. United States, 122 Fed. Cl. 707, 709 (2015) (noting that the Supremacy Clause of Article VI does not "'mandate the payment of money damages for its violation.'" (quoting Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997)) (alteration added)); Hanford v. United States, 63 Fed. Cl. 111, 119 (2004) ("[The United States Court of Federal Claims] lacks jurisdiction over plaintiff's Supremacy Clause claim." (alteration added)), aff'd, 154 F. App'x 216 (Fed. Cir.), cert. denied, 549 U.S. 1341 (2007). This court, therefore, lacks jurisdiction over any of plaintiff's claims that allege a constitutional violation of the Sixth Amendment, the Fourteenth Amendment, or of the Supremacy Clause.

Plaintiff's complaint also includes allegations pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution. Plaintiff alleges that he was denied due process in his dealings based on the facts alleged in his complaint and that he was deprived of his property by foreclosure proceedings, executed through the judicial system of the State of Connecticut, without due process or just compensation. The United States Court of Appeals for the Federal Circuit has held that this court does not possess jurisdiction to consider claims arising under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (citing LeBlanc v. United States, 50 F.3d at 1028) (concluding that the United States Court of Federal Claims has no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments); see also Smith v. United States, 709 F.3d at 1116 ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." (citing LeBlanc v. United States, 50 F.3d at 1028)); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir.) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act." (alteration added)), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940 (2007); Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir.) ("[T]he due process clause does not obligate the government to pay money damages." (alteration added)), reh'g denied (Fed. Cir. 1995); Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); Murray v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (noting that the Fifth Amendment Due Process clause does not include language mandating the payment of money damages); Ali-Bey v. United States, 169 Fed. Cl. at 734; Gulley v. United States, 150 Fed. Cl. at 415 ("In particular, the due process clause of the [United States] Constitution and 42 U.S.C. § 1983 (both of which [plaintiff] cites in his Complaint) are not money mandating sources of law." (alterations added) (citing Harris v. United States, 868 F.3d 1376, 1381

(Fed. Cir. 2017) (quoting In re United States, 463 F.3d at 1335 n.5))); Barksdale v. United States, 174 Fed. Cl. 168, 175 (2024) ("Plaintiff alleges a Taking of his constitutional rights to due process and equal protection, over which this Court lacks jurisdiction."); Vondrake v. United States, 141 Fed. Cl. 599, 602 (2019) (citing Smith v. United States, 709 F.3d at 1116); Weir v. United States, 141 Fed. Cl. at 177; Maehr v. United States, 139 Fed. Cl. 1, 3–4 (2018) (stating that Smith v. United States, 709 F.3d at 1114, "remains controlling law today"), aff'd, 767 F. App'x 914 (Fed. Cir.), cert. denied, 589 U.S. 985, reh'g denied, 589 U.S. 1097 (2019); Zainulabeddin v. United States, 138 Fed. Cl. 492, 505 (2018) (citing LeBlanc v. United States, 50 F.3d at 1028); Harper v. United States, 104 Fed. Cl. 287, 291 n.5 (2012); Hampel v. United States, 97 Fed. Cl. 235, 238 (2011). Due process claims "must be heard in District Court." Kam-Almaz v. United States, 96 Fed. Cl. 84, 89 (2011) (citing Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d at 1334), aff'd, 682 F.3d 1364 (Fed. Cir. 2012). This court, therefore, lacks subject matter jurisdiction to review plaintiff's due process claims pursuant to the Fifth Amendment to the United States Constitution.

Plaintiff also alleges violations of other sources of law by state actors and private individuals, including the Uniform Commercial Code (UCC). In Stephens v. United States, 166 Fed. Cl. at 606, the court indicated, in a claim against the United States, that the UCC's "provisions do not mandate the payment of money damages." (citing Clark v. United States, 116 F. App'x 278, 279 (Fed. Cir. 2004)). See also Kemp v. United States, 124 Fed. Cl. 387, 393 (2015) ("[P]laintiff cannot rely on the UCC as the money-mandating statute that entitles him to monetary relief from the federal government." (alteration added)); Spencer v. United States, 98 Fed. Cl. 349, 357 (2011) ("[T]o the extent that plaintiff brings claims based upon the UCC, the court lacks jurisdiction." (alteration added)).

Regarding plaintiff's additional allegations based on Executive Order 13818 for Blocking the Property of Persons Involved in Serious Human Rights Abuse or Corruption, these claims also cannot be filed in the United States Court of Federal Claims. See Double Lion Uchet Express Trust v. United States, 149 Fed. Cl. 415, 421 (2020) ("[EO 13818] expressly provides that it 'is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States.'" (alteration added) (quoting Exec. Order No. 13818, § 13, 82 Fed. Reg. 60839 (Dec. 20, 2017))); Fanelli v. United States, 146 Fed. Cl. 462, 467 (2020) ("[EO 13818 does] not require the federal government to provide compensation." (alteration added)). Therefore, this court lacks subject matter jurisdiction over any of plaintiff's claims arising under the UCC or EO 13818.

Moreover, plaintiff claims that HUD violated FOIA and the Federal Records Act. FOIA is not a money-mandating source of law, and this court lacks statutory jurisdiction over litigating FOIA claims. See, e.g., Marcum v. United States, 173 Fed. Cl. 168, 170 (2024) ("[T]he Court [of Federal Claims] does not have jurisdiction to adjudicate . . . claims under [FOIA] as the federal district courts have exclusive jurisdiction over such matters." (alterations added; omission added)); Treece v. United States, 96 Fed. Cl. 226, 232 (2010) ("[T]he federal district courts have exclusive jurisdiction over [claims under FOIA]." (alterations added)); McNeil v. United States, 78 Fed. Cl. 211, 237 (2007) ("FOIA lacks

14

any money-mandating provisions."), aff'd, 293 F. App'x 758 (Fed. Cir. 2008). This court also has held that the Federal Records Act is not money mandating. See Nesselrode v. United States, 127 Fed. Cl. 421, 429 (2016); see also Parra v. United States, No. 25-431C, 2025 WL 1792979 (Fed. Cl. June 27, 2025); Murray v. United States, No. 22-205T, 2022 WL 18176579, at *14 (Fed. Cl. Oct. 5, 2022) (finding that the Federal Records Act does not "mention money damages or compensation by the federal government" and, therefore, is not a money-mandating source of law), appeal dismissed, No. 2023-1314, 2023 WL 2398746 (Fed. Cir. Mar. 8, 2023).[7] This court, therefore, lacks jurisdiction over plaintiff's due process claims against HUD. The HUD regulation cited by plaintiff, 24 C.F.R. § 15.106, establishes the procedure by which HUD charges fees to those who request information under FOIA. The regulation contains no language suggesting that the federal government has a duty to compensate a requestor based on HUD's failure to comply with its regulations. Therefore, this court lacks subject matter jurisdiction over any of plaintiff's claims alleging violations of FOIA or the Federal Records Act.

Likewise, to the extent plaintiff's complaint alleges any criminal activity on the part of federal or state officials, who, in any event, are improper defendants in this court, such as plaintiff's allegations that HUD employees criminally concealed federal records via digital erasure, this court also lacks jurisdiction over such claims. See Greene v. United States, 100 F.4th 1364, 1370 (Fed. Cir. 2024); Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994); Knight v. United States, 174 Fed. Cl. 373, 379 (2025) ("The Court cannot exercise jurisdiction over this claim because it 'has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code.'" (quoting Joshua v. United States, 17 F.3d at 379)); Marcum v. United States, 173 Fed. Cl. 168, 170 (2024) ("[T]he Court does not have jurisdiction to adjudicate any claims under the federal criminal code." (alteration added)); Ali-Bey v. United States, 169 Fed. Cl. at 737 ("[T]his Court lacks jurisdiction over criminal causes of action." (alteration added)); Okoro v. United States, 169 Fed. Cl. 462, 465 (2024) (citing Joshua v. United States, 17 F.3d at 379); Morisset v. United States, 169 Fed. Cl. 307, 309 (2024); Taylor v. United States, 168 Fed. Cl. 696, 700 (2023); Bishop v. United States, 166 Fed. Cl. at 746 ("[T]he criminal code is beyond this Court's limited jurisdiction." (alteration added)); Starnes v. United States, 162 Fed. Cl. 468, 474 (2022) ("This Court lacks jurisdiction over any criminal law claims."); Whiteford v. United States, 148 Fed. Cl. 111, 122 (2020) ("[T]he Court of Federal Claims is not a district court and lacks jurisdiction over criminal acts." (alteration added)); Johnson v. United States, 144 Fed. Cl. 578, 582 (2019) ("The jurisdiction of the United States Court of Federal Claims does not include jurisdiction over criminal causes of action." (citations omitted)); Vincent v. United States, 135 Fed. Cl. 561, 563 (2017); Khalil v. United States, 133 Fed. Cl. 390, 392 (2017); Cooper v. United States, 104 Fed. Cl. 306, 312 (2012) ("[T]his court does not have jurisdiction over [plaintiff's] claims because the court may review neither criminal matters, nor the decisions of district courts." (alterations added; internal citation

---

[7] The court acknowledges that Parra v. United States and Murray v. United States are both unpublished decisions, but appear to be cases in which this court has offered fulsome discussions of jurisdiction under the Federal Records Act, and the appeal dismissal by the United States Court of Appeals for the Federal Circuit in the Murray case is confirmation of the absence of jurisdiction in this court over claims of violations under the Federal Records Act.

omitted)); Mendes v. United States, 88 Fed. Cl. 759, 762 (2009); Hufford v. United States, 87 Fed. Cl. 696, 702 (2009) (holding that the United States Court of Federal Claims lacked jurisdiction over claims arising from the violation of a criminal statute); McCullough v. United States, 76 Fed. Cl. 1, 4 (2006) (finding that the United States Court of Federal Claims lacked jurisdiction to consider plaintiff's criminal claims), appeal dismissed, 236 F. App'x 615, reh'g denied, (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007). Therefore, any allegations by plaintiff of criminal conduct also must fail for lack of jurisdiction in this court.

In plaintiff's response to defendant's motion to dismiss, plaintiff further alleges that his claim arises from HUD and GNMA's mandatory duties under 12 U.S.C. § 1721(g), the GNMA MBS Guide, and general mandatory federal custodial duties which, according to plaintiff, are money-mandating. The court notes that "asserting claims for the first time in a response brief is no substitute for formally amending a complaint." Jarvis v. United States, 154 Fed. Cl. 712, 718–19 (2021), aff'd, No. 2022-1006, 2022 WL 1009728 (Fed. Cir. Apr. 5, 2022), cert. denied, 143 S. Ct. 394 (2022) (citations omitted); see also Casa de Cambio Comdiv S.A., de C.V. v. United States, 291 F.3d 1356, 1366 (Fed. Cir. 2002); United States v. Ford Motor Co., 463 F.3d 1267, 1276–77 (Fed. Cir. 2006)); see also Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002); MLB Transportation, Inc. v. United States, 178 Fed. Cl. 385, 398 (2025) (citing Kalick v. United States, 109 Fed. Cl. 551, 561 n.10 (2013)). Moreover, according to a report from the Congressional Budget Office website, the Mortgage-Backed Securities (MBS) Program is a program by which GNMA "guarantee[s] the timely payment of principal and interest on mortgage-backed securities that private financial institutions create from mortgages that are insured or guaranteed by other federal programs." Mitchell Remy et al., Ginnie Mae and the Securitization of Federally Guaranteed Mortgages, Congressional Budget Office (Jan. 2022), https://www.cbo.gov/publication/57755 (last visited Apr. 13, 2026). Defendant correctly points out that guarantees under the MBS program extend to investors in mortgage-backed securities, not to borrowers of the underlying mortgages, such as plaintiff. Furthermore, the MBS Guide is not a source of substantive law, but rather describes the requirements of the MBS Program that issuers must comply with upon executing a formal Guaranty Agreement. Plaintiff does not allege to be an issuer under the MBS Program, or to have formed an agreement with the federal government through participation in the program. Although plaintiff asserts: "When the United States guarantees a security and assumes custodial duties over the underlying collateral, the duty to administer those assets properly is inherently money-mandating." The language in 12 U.S.C. § 1721(g) about GNMA's guarantees refers only to "issuers" under the program, not to borrowers such as plaintiff Maldonado. Plaintiff has failed to identify a substantive source of law which provides that HUD or GNMA's duties as alleged by plaintiff are money-mandating for plaintiffs such as Mr. Maldonado, and, therefore, these claims by plaintiff must be dismissed for lack of subject matter jurisdiction.

In addition to arguing that certain of plaintiff's claims must be dismissed for lack of subject matter jurisdiction, defendant also argues that certain of plaintiff's claims must be dismissed for failure to state a claim. When examining what must be pled to state a claim, a plaintiff need only state in the complaint "a short and plain statement of the claim

showing that the pleader is entitled to relief." RCFC 8(a)(2) (2025); see also Bell Atl. Corp. v. Twombly, 550 U.S. at 555. The United States Supreme Court has stated:

> While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid. [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure §1216 pp. 235–236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Nietzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim that relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56, 570 (first alteration added; last omission added; footnote and other citations omitted); see also Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–57, 570); First Mortg. Corp. v. United States, 961 F.3d 1331, 1339 (Fed. Cir. 2020); Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1380 (Fed. Cir. 2019); Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016); A&D Auto Sales, Inc. v. United States, 748 F.3d at 1157; Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir.), reh'g and reh'g en banc denied, (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354–55 (Fed. Cir.), cert. denied, 562 U.S. 830 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 545, 557)), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 544)); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations

17

must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570)), reh'g denied (Fed. Cir.), cert. denied, 557 U.S. 937 (2009); Christen v. United States, 133 Fed. Cl. 226, 229 (2017); Christian v. United States, 131 Fed. Cl. 134, 144 (2017); Vargas v. United States, 114 Fed. Cl. 226, 232 (2014); Fredericksburg Non-Profit Hous. Corp. v. United States, 113 Fed. Cl. 244, 253 (2013), aff'd, 579 F. App'x 1004 (Fed. Cir. 2014); Peninsula Grp. Cap. Corp. v. United States, 93 Fed. Cl. 720, 726–27 (2010); Legal Aid Soc'y of N.Y. v. United States, 92 Fed. Cl. 285, 292, 298 n.14 (2010). "It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) 'when the facts asserted by the claimant do not entitle him to a legal remedy.'" Wild v. United States, 162 Fed. Cl. 67, 70–71 (2022) (quoting Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002)).

Regarding plaintiff's general claim of "deprivation of property rights," the Takings Clause of the Fifth Amendment to the United States Constitution provides in pertinent part, "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. To succeed under a Fifth Amendment Takings Clause claim, a plaintiff must show that the government took a private property interest for public use without just compensation. See Dimare Fresh, Inc. v. United States, 808 F. 3d 1301, 1306 (Fed. Cir. 2015). This court's jurisdiction over takings claims, however, does not extend to a taking by parties other than the United States. See Hatten v. United States, 174 Fed. Cl. 271, 276 (2024) (dismissing plaintiff's takings claim because "her property was taken, not by the United States, but by private entities and local officials"), appeal dismissed, No. 2025-1558, 2025 WL 2318803 (Fed. Cir. Aug. 12, 2025); Bakari-El v. United States, 127 Fed. Cl. at 706 ("The Court of Federal Claims possesses jurisdiction to entertain Fifth Amendment takings claims against the United States."). Plaintiff Maldonado does not allege that there was a taking by the United States. Moreover, in order to assert a valid takings claim, plaintiff's takings claim must meet certain criteria to assert and then demonstrate a claim takings claim. To succeed under a Fifth Amendment Takings Clause claim, a plaintiff has the burden of proof to demonstrate that the government took a private property interest for public use without just compensation. See City of Fresno v. United States, 124 F.4th 876, 895 (Fed. Cir. 2024); St. Bernard Par. Gov't v. United States, 887 F.3d at 1362. To pursue a takings claim in the United States Court of Federal Claims, the plaintiff must "'concede the validity of the government action which is the basis of the takings claim to bring suit under the Tucker Act.'" Hearts Bluff Game Ranch, Inc. v. United States, 669 F.3d 1326, 1332 (Fed. Cir.) (quoting Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 802 (Fed. Cir. 1993)), cert. denied, 567 U.S. 917 (2012). The United States Court of Appeals for the Federal Circuit has established a two-part test to determine whether government actions amount to a taking of private property under the Fifth Amendment. See Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1348 (Fed. Cir. 2013); Klamath Irr. Dist. v. United States, 635 F.3d 505, 511 (Fed. Cir. 2011). A court first determines whether a plaintiff possesses a cognizable property interest in the subject of the alleged taking. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) (citing United States v. Gen. Motors Corp., 323 U.S. 373 (1945)); see also McCutchen v. United States, 14 F.4th 1355, 1364 (Fed. Cir. 2021) (quoting Huntleigh

18

USA Corp. v. United States, 525 F.3d 1370, 1377 (Fed. Cir.), cert. denied, 555 U.S. 1045 (2008)), cert. denied, 143 S. Ct. 422 (2022). In addition to "'having identified a valid property interest, the court must determine whether the government action at issue amounted to a compensable taking of that property interest.'" Huntleigh USA Corp. v. United States, 525 F.3d at 1378 (quoting Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1372 (Fed. Cir.) reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139, 125 (2005)). Plaintiff's complaint has not asserted factual allegations sufficient to allege a valid takings claim. In sum, plaintiff's claims based on the Fifth Amendment Takings Clause against entities other than the United States lacks subject matter jurisdiction and plaintiff's failure to allege factual allegations to allege a valid takings claim demonstrates a failure to state a claim in this court.

Plaintiff also may be trying to allege breach of contract claims regarding alleged breaches of federal program responsibilities. To have privity of contract with the United States government, and, therefore, to invoke jurisdiction in the United States Court of Federal Claims for an alleged breach of contract claim, plaintiff "must show that either an express or implied-in-fact contract underlies [the] claim." Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (alteration added); see also Park Props. Assocs., L.P. v. United States, 916 F.3d 998, 1002 (Fed. Cir. 2019), cert. denied, 589 U.S. 1133 (2020). "An express contract 'must be manifested by words, either oral or written, which contains agreement and/or mutual assent.'" Frankel v. United States, 118 Fed. Cl. 332, 335 (2014) (quoting Essen Mall Props. v. United States, 21 Cl. Ct. 430, 439 (1990) (quoting Webster Univ. v. United States, 20 Cl. Ct. 429, 433 (1990))), aff'd, 842 F.3d 1246 (Fed. Cir. 2016). As recently explained by the United States Court of Appeals for the Federal Circuit:

> There are four requirements to form a contract with the Government: "(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States." Anderson v. United States, 344 F.3d 1343, 1353 (Fed. Cir. 2003). These elements apply to both express and implied-in-fact contracts.

Boyd v. United States, 134 F.4th 1348, 1352 (Fed. Cir. 2025); see also Fairholme Funds, Inc. v. United States, 26 F.4th 1274, 1293–94 (Fed. Cir. 2022), cert. denied, 143 S. Ct. 563 (2023); Columbus Reg'l Hosp. v. United States, 990 F.3d 1330, 1339 (Fed. Cir. 2021); Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1381 (Fed. Cir. 2019); Bank of Guam v. United States, 578 F.3d at 1326 (quoting Trauma Serv. Grp. v. United States, 104 F.3d at 1325); Chattler v. United States, 632 F.3d 1324, 1330 (Fed. Cir. 2011) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1325); Night Vision Corp. v. United States, 469 F.3d 1369, 1375 (Fed. Cir. 2006), cert. denied, 550 U.S. 934 (2007); Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003) ("Thus, the requirements for an implied-in-fact contract are the same as for an express contract; only the nature of the evidence differs."); City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998); San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989); Stanwyck v. United States, 127 Fed. Cl. 308, 312 (2016); Yifrach v. United States,

19

145 Fed. Cl. 691, 698 (2019), aff'd, 825 F. App'x 899 (Fed. Cir. 2020); Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. 760, 767 (2014); Eden Isle Marina, Inc. v. United States, 113 Fed. Cl. 372, 492 (2013); Council for Tribal Emp. Rts. v. United States, 112 Fed. Cl. 231, 243 (2013), aff'd, 556 F. App'x 965 (Fed. Cir. 2014); BioFunction, LLC v. United States, 92 Fed. Cl. 167, 172 (2010); Mastrolia v. United States, 91 Fed. Cl. 369, 384 (2010) (citing Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1265 (Fed. Cir. 2005)); see also Weeks v. United States, 124 Fed. Cl. 630, 633 (2016); Vargas v. United States, 114 Fed. Cl. at 233; Prairie Cnty., Mont. v. United States, 113 Fed. Cl. 194, 202 (2013), aff'd, 782 F.3d 685 (Fed. Cir.), cert. denied, 577 U.S. 923 (2015); Cal. Hum. Dev. Corp. v. United States, 87 Fed. Cl. 282, 293 (2009), aff'd, 379 F. App'x 979 (Fed. Cir. 2010); Aboo v. United States, 86 Fed. Cl. 618, 629, aff'd, 347 F. App'x 581 (Fed. Cir. 2009); SGS-92-X003 v. United States, 74 Fed. Cl. 637, 653–54 (2007); Arakaki v. United States, 71 Fed. Cl. 509, 514 (2006), aff'd, 228 F. App'x 1003 (Fed. Cir. 2007); Fincke v. United States, 675 F.2d 289, 295 (Ct. Cl. 1982); Russell Corp. v. United States, 210 Ct. Cl. 596, 609 (1976). In contract formation with the government, "the law requires that a Government agent who purports to enter into or ratify a contractual agreement that is to bind the United States have actual authority to do so." Monarch Assur. P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1325). "The corollary is that any party entering into an agreement with the Government accepts the risk of correctly ascertaining the authority of the agents who purport to act for the Government . . . ." Id. (omission added) (citing Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380); see also Snyder & Assocs. Acquisitions LLC v. United States, 133 Fed. Cl. 120, 126 (2017).

The plaintiff bears the burden of having to show specifically which term or condition of a contract the defendant breached. See Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 715 (2010) ("[T]here is a minimum burden for Plaintiff, in asserting a breach of contract claim, to explicitly identify the provisions and terms of the contract that have been breached." (alteration added) (quoting Garreaux v. United States, 77 Fed. Cl. 726, 730 (2007))); see also RCFC 9(k) (2025) ("In pleading a claim founded on a contract or treaty, a party must identify the substantive provisions of the contract or treaty on which the party relies. In lieu of a description, the party may annex to the complaint a copy of the contract or treaty, indicating the relevant provisions."); Kinsey v. United States, 176 Fed. Cl. 762, 765 (stating that RCFC 9(k) "mandates that a plaintiff cite the substantive provisions of the contract that form the foundation of its breach of contract claim"), recons. denied, 177 Fed. Cl. 208 (2025).

Nowhere in plaintiff's complaint does plaintiff allege to have actually formed a contract with the United States or allege that any government representative had actual authority to bind the United States to a contract with the plaintiff. See Boyd v. United States, 134 F.4th at 1352. As indicated above, in plaintiff's response to defendant's motion to dismiss, plaintiff alleged that the statutory Mortgage-Backed Securities (MBS) Program was a money-mandating source of law which could establish subject matter jurisdiction in this court. Plaintiff did not, however, allege to have formed an agreement with the federal government through participation in a government program, including the

20

MBS program. Therefore, plaintiff has failed to state a claim for breach of contract against the federal government.

In plaintiff's response to defendant's motion to dismiss, plaintiff also requests, as an alternative to a denial of defendant's motion to dismiss, leave to amend his complaint. Defendant replies that any amendment to plaintiff's complaint would be futile because the court lacks subject matter jurisdiction over plaintiff's claims. Pursuant to RCFC 15(a), once twenty-one days after service of a responsive pleading has passed, as is true in plaintiff's case currently before the court, "a party may amend its pleading only with the opposing party's written consent or the court's leave." RCFC 15(a) (2025). Thereafter, the grant or denial of an opportunity to amend is within the discretion of the trial court. See Foman v. Davis, 371 U.S. 178, 182 (1962); see also Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971) ("It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."); Tamerlane, Ltd. v. United States, 550 F.3d 1135, 1147 (Fed. Cir. 2008) ("'The decision to grant or deny a motion for leave to amend . . . lies within the sound discretion of the trial court.'" (omission in original) (quoting Insituform Techs., Inc. v. Cat Contracting, Inc., 385 F.3d 1360, 1372 (Fed. Cir. 2004))); Datascope Corp. v. SMEC, Inc., 962 F.2d 1043, 1045 (Fed. Cir. 1992) ("The grant or denial of leave to amend the complaint is within the discretion of the district court, and will be reversed only for an abuse of discretion." (internal citation omitted)); Mitsui Foods, Inc. v. United States, 867 F.2d 1401, 1403 (Fed. Cir. 1989) ("It is well established that the grant or denial of an opportunity to amend pleadings is within the discretion of the trial court.").

Although RCFC 15, generally, "is liberally construed, and courts generally grant leave to amend if there is no 'apparent or declared reason' not to permit amendment," Sonoran Tech. & Prof'l Servs., LLC v. United States, 133 Fed. Cl. 401, 403 (2017) (quoting A & D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1158 (Fed. Cir. 2014)), a request for leave to amend should not be futile. In A & D Auto Sales, Inc. v. United States, the United States Court of Appeals for the Federal Circuit recognized that reasons to deny leave to amend to include, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." A & D Auto Sales, Inc. v. United States, 748 F.3d at 1158 (quoting Foman v. Davis, 371 U.S. at 182); see also Te-Moak Bands of W. Shoshone Indians v. United States, 948 F.2d 1258, 1260 (Fed. Cir. 1991); Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. at 330–31 ("[I]n deciding whether to permit such an amendment, the trial court was required to take into account any prejudice that Zenith [the nonmovant] would have suffered as a result.") (alterations added); Shell Oil Co. v. United States, 896 F.3d 1299, 1316 (Fed. Cir. 2018) ("'[A]mendments are not allowed where they result in undue delay or prejudice.'" (alteration added) (quoting Cencast Servs., L.P. v. United States, 729 F.3d 1352, 1363 (Fed. Cir. 2013))); Sonoran Tech. & Prof'l Servs., LLC v. United States, 133 Fed. Cl. at 403 ("The Court should deny leave to amend if there is evidence of delay, bad faith, repeated failure to correct a complaint's deficiencies, undue prejudice to the opposing party, or if the amendment would be futile."). Moreover, "'[t]he existence of any one of these criteria is sufficient to deny a motion to amend, the theory

21

being that the amendment would not be necessary to serve the interests of justice under such circumstances.'" Christofferson v. United States, 77 Fed. Cl. 361, 363 (2007) (alteration added) (quoting Spalding & Son, Inc. v. United States, 22 Cl. Ct. 678, 680 (1991)).

"When futility is asserted as a basis for denying a proposed amendment, courts do not engage in an extensive analysis of the merits of the proposed amendments." St. Paul Fire & Marine Ins. Co. v. United States, 31 Fed. Cl. 151, 155 (1994); see also Wolfing v. United States, 163 Fed. Cl. 135, 149 (2022); Mason v. United States, 156 Fed. Cl. 614, 617 (2021). Instead, "courts simply decide whether a party's proposed amendment is facially meritless and frivolous, i.e., 'Where futility is proposed as a basis for denying amending a complaint, courts will discern whether a pleading is frivolous and insufficient on its face or has been adequately addressed in the prior complaint.'" Id. (emphasis in original) (quoting Alaska v. United States, 15 Cl. Ct. 276, 280 (1988)). "This court has found that granting leave to amend a pleading would be futile if the amended complaint would fail to state a claim upon which relief can be granted or if the proposed amendment would fail for lack of jurisdiction or is 'facially meritless and frivolous.'" Chapman v. United States, 130 Fed. Cl. 216, 219 (2017) (citation omitted) (quoting Smith v. United States, 120 Fed. Cl. 455, 458 (2015)); see also Diaz v. United States, 141 Fed. Cl. 161, 166 (2018) ("Additionally, '[a] claim that is barred by the statute of limitations would be futile.'" (alteration in original) (quoting Chapman v. United States, 130 Fed. Cl. at 219)); Godfrey v. United States, 131 Fed. Cl. 111, 123 (2017); Marchena v. United States, 128 Fed. Cl. 326, 330 (2016) ("A proposed amendment is futile if it would not survive a motion to dismiss."), aff'd, 702 F. App'x 988 (Fed. Cir. 2017); Meyer Grp., Ltd. v. United States, 115 Fed. Cl. 645, 650 (2014) ("A counterclaim must contain facts sufficient to state a claim to relief that is plausible on its face to survive a motion to dismiss under Rule 12(b)(6).") (internal quotations omitted); Shoshone Indian Tribe of the Wind River Reservation, Wyo. v. United States, 71 Fed. Cl. 172, 176 (2006) ("A motion to amend may be deemed futile if a claim added by the amendment would not withstand a motion to dismiss."). As the United States Court of Appeals for the Federal Circuit has held:

> When a party faces the possibility of being denied leave to amend on the ground of futility, that party must demonstrate that its pleading states a claim on which relief could be granted, and it must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion.

Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d 1339, 1354–55 (Fed. Cir. 2006); see also Taino Constr. Grp., LLC v. United States, 177 Fed. Cl. 730, 749 (2025); Dixon v. United States, 158 Fed. Cl. 80, 85 (2022) (citing Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d at 1354–55). In the multiple counts in his complaint, plaintiff Maldonado has not alleged a single allegation justiciable in this court. Although plaintiff has asked the court to consider amending his complaint, the court finds no basis to allow an amendment given the facts alleged by plaintiff. The court concludes that given the absence of jurisdiction over the entities and individuals plaintiff seeks to sue, and plaintiff's evident failure to state viable claims, further litigation

22

would be futile and would waste the plaintiff's, the defendant's, and the court's time and effort. As explained in detail above, even taking the facts alleged in plaintiff's complaint as true, plaintiff has failed to allege a claim against the United States within the subject matter jurisdiction of this court and has failed to state a claim upon which relief can be granted. Plaintiff has not offered any indication which would support that an amended pleading could survive a dispositive, future motion to dismiss. Therefore, the court determines that plaintiff's request to amend his complaint would be futile and is denied.

## C O N C L U S I O N

For the foregoing reasons, defendant's motion to dismiss plaintiff's case is **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk's Office shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED.**

<u>s/Marian Blank Horn</u>
**MARIAN BLANK HORN**
**Judge**